1  Devin Fok (SBN #256599)
   devin@devinfoklaw.com
2  **DHF Law, PC**
   2304 Huntington Drive, Suite 210
3  San Marino, CA 91108
4  Ph: (888) 651-6411
   Fax: (818) 484-2023
5
6  Attorneys for Plaintiff and Proposed Class

7  IN THE UNITED STATES DISTRICT COURT
8  FOR THE CENTRAL DISTRICT OF CALIFORNIA
9

10 KAREN WILLIAMS *individually and on behalf of persons similarly situated,*           )  CASE NO.:
11                                                                                      )
12              Plaintiff,                                                              )  **CLASS ACTION COMPLAINT FOR**
                                                                                        )  **VIOLATIONS OF THE FAIR**
13         vs.                                                                          )  **CREDIT REPORTING ACT, 15**
14                                                                                      )  **U.S.C §1681 ET SEQ.**
15 FIRST ADVANTAGE CORP.,                                                               )
               Defendant.                                                               )  **JURY TRIAL DEMANDED**
16                                                                                      )

        Plaintiff Karen Williams files this Original Class Action Complaint on behalf of herself and persons similarly situated and in support of her claims alleges as follows:

## I.  INTRODUCTION

1. Recognizing that accurate background-check screening reports are essential to millions of Americans applying for jobs, credit, and housing, Congress has chosen to regulate the accuracy of and procedures for preparing these reports through the Fair Credit Reporting Act ("FCRA").

2. Defendant First Advantage Corp. ("First Advantage"), one of the largest background-check screening companies in the United States, has systematically and willfully violated FCRA by failing to use reasonable procedures to assure the maximum possible accuracy of its reports. 15 U.S.C. § 1681e(b). Despite being on notice that duplicative criminal history search results are inaccurate and misleading and violate FCRA's "maximum possible accuracy" standard, First Advantage fails to de-duplicate the results of criminal history database searches. First Advantage's duplicative reporting created an inaccurate impression that the subjects of its reports have more extensive criminal histories than they in fact do.

3. Based on First Advantage's systematic and willful FCRA violations, Plaintiff asserts FCRA claims on her own behalf and on behalf of a Class of similarly situated people who were the subjects of reports containing duplicative criminal history information. Plaintiff seeks actual damages, statutory damages, injunctive relief to improve the accuracy of First Advantage's reporting practices, punitive damages, attorneys' fees, costs and expenses of suit, and all other appropriate relief.

## II.  PARTIES

4. Plaintiff Karen Williams is and at all relevant times has been a resident of Wayne County, Michigan.

5. Defendant First Advantage Corp. is and at all relevant times has been a foreign corporation registered to do business in the State of California.

## III. JURISDICTION AND VENUE

6. The court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because Plaintiff's claims arise under the FCRA, 15 U.S.C. § 1681 *et seq*.

7. The Court has jurisdiction over First Advantage, and the venue is proper under 28 U.S.C. § 1391(b), because First Advantage is registered to do business in the State of California.

## IV. FACTUAL ALLEGATIONS

8. On or about March 16, 2020, Ms. Williams received a job offer from Lowe's Home Improvement ("Lowe's") for a position as a merchandising service associate at a Lowe's store in Detroit, Michigan at an hourly rate of $15.25 to start and an increase in salary after a 90-day probation period.

9. In order to asses Ms. Williams' eligibility for this job, Lowe's obtained a background-check report regarding Ms. Williams from First Advantage.

10. First Advantage assembled information regarding Ms. Williams from multiple sources in order to furnish this report to Lowe's. Among other sources, First Advantage searched its National Criminal File database and records of the Wayne County, Michigan Circuit Court, Criminal Division.

11. After assembling and evaluating this information, First Advantage inaccurately and misleadingly reported to Lowe's two database hits regarding Ms. Williams. The first hit, from First Advantage's National Criminal File, reported that Ms. Williams purportedly was found guilty of felony charges of "stolen property, receiving and concealing – motor vehicle." The second hit, from a search of Wayne County, Michigan, criminal records, reported that she had pled guilty to felony charges of "stolen property, receiving and concealing – motor vehicle."

12. In fact, the charges were not against Ms. Williams, but against her sister, a fact that First Advantage reasonably could have ascertained had it consulted the Wayne County, Michigan court records. Specifically, on August 18, 2008, Ms. Williams filed a Motion to Release Defendant, Wrong Defendant to ensure that court records reflected that she was not the actual defendant in this case. The motion was granted and had been a part of the public record for the last 12 years.

13. In addition, as First Advantage could reasonably have determined using the information available in its files, these two database hits were duplicative results, reporting the same charge twice. First Advantage, however, failed to follow reasonable procedures to de-duplicate its database search results. Instead, First Advantage created an inaccurate impression that Ms. Williams had pled guilty to not just one but two felony charges.

14. Because of First Advantage's failure to follow reasonable de-duplication procedures, the background check report furnished to Lowe's was inaccurate and misleading in a way that would be expected to have an adverse effect on Ms. Williams' employment prospects.

15. Lowe's paid First Advantage a fee for the report.

16. First Advantage used means and facilities of interstate commerce for the purpose of preparing and furnishing this consumer report, including but not limited to the internet, interstate telephone services, and interstate mail delivery services.

17. As a result of First Advantage's furnishing this inaccurate and misleading report to Lowe's, Ms. Williams suffered injuries, including: (1) injuries to her statutorily protected reputational rights; (2) loss of her prospective employment at Lowe's; and (3) emotional distress.

## V.  CLASS ALLEGATIONS

**A. FCRA regulates the reporting of adverse information, including criminal background-check information, to protect consumers.**

18. Background-check screening accuracy is crucial to the U.S. labor market. According to a 2018 survey, 95% of employers conduct one or more types of background screening; and 94% of those include some form of criminal history check. Consumer Financial Protection Bureau, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment* 4 (October 2019).[1] An inaccurate or misleading criminal history report can derail job offers, leaving job-seekers unemployed for significant periods of time. *See Williams v. First Advantage LNS Screening Solutions, Inc.*, 238 F. Supp. 3d 1333, 1341–42 (N.D. Fla. 2017), *aff'd in part* 947 F.3d 735 (inaccurate First Advantage background check reports caused plaintiff to lose two job offers, leaving him unemployed for several months).

19. Recognizing that the accuracy of background-check reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the FCRA, 15 U.S.C. §§ 1681a, *et seq*. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit

---

[1] *Available at* https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf.

reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

20. Defendant First Advantage is a consumer reporting agency ("CRA") subject to FCRA because it is a "person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

21. First Advantage is one of the largest background-check screening companies in the United States. As of 2018, it had an estimated 7.4% share of a $3.2 billion market. CFPB, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment* 14–15 & n.17 (October 2019).[2] It operates in 26 locations with more than 4,300 employees,[3] and at the time First Advantage was acquired by a private equity group in November 2019, its previous owner estimated that it had 35,000 worldwide clients. *See Press Release: Silver Lake to Acquire First Advantage* (November 25, 2019).[4]

22. A "consumer" is defined in FCRA as "an individual." 15 U.S.C. § 1681a(c). A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … employment." 15 U.S.C. § 1681a(d).

23. First Advantage prepares background check reports by assembling and evaluating information regarding individuals' criminal histories and sells these reports to, among others, prospective employers. First Advantage uses means and facilities of interstate commerce to prepare and furnish these reports, including but not limited to the internet, interstate telephone services, and interstate mail delivery services. First Advantage's reports are therefore governed by FCRA.

---

[2] *Available at* https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf.
[3] *See* https://fadv.com/about-us/.
[4] *Available at* https://fadv.com/press-release/silver-lake-to-acquire-first-advantage/.

...

**B. First Advantage failed to follow reasonable procedures to assure the maximum possible accuracy of its consumer reports.**

24. In enacting FCRA, Congress determined that consumers' rights to have accurate information reported about their backgrounds and criminal histories—which has long been protected by the common-law torts of libel, defamation, and slander—merits additional, stricter statutory protections in the background-check reporting context. A person's reputation as reflected in his or her background-check report is vitally important to securing and maintaining employment and housing, as well as generally maintaining good reputation in the community. Inaccurate, adverse, or derogatory information on a background-check report invades consumers' statutory reputational rights and puts them at risk of being denied employment, housing, credit, or insurance.

25. To achieve its goals, Congress has required that CRAs "follow reasonable procedures" … "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

26. In Ms. Williams' case, however, First Advantage simply reported the results of its database searches without consulting the underlying county criminal records, which showed that Ms. Williams was not in fact the defendant in the reported cases. Furthermore, First Advantage failed to deduplicate its database search results, leaving the inaccurate impression that Ms. Williams had been convicted of two felonies.

27. Similarly in reports it prepared and furnished regarding Class members, First Advantage failed to deduplicate its database search results. It is First Advantage's regular practice to report both the results of its National Criminal File database searches and the results of any state, county, or district-level criminal history information searches separately in the same report. This reporting practice inaccurately and misleadingly conveys to employers using First Advantage's reports that the subjects of the reports have more extensive criminal histories than they in fact do.

28. First Advantage's inaccurate and misleading duplicative reporting of criminal history information has injured Ms. Williams and the Class members by depriving them of their statutorily protected reputational rights, exposed them to the risk that they might be denied a job, housing, credit, or insurance, and caused injuries, including loss of income, loss of time and expenses incurred to correct inaccurate reporting, and/or emotional distress.

### C. First Advantage willfully violated FCRA.

29. As the plain language of the statute makes clear, and court decisions as well as federal government agency statements and enforcement actions have confirmed, such duplicative reporting is inconsistent with FCRA's "maximum possible accuracy" standard.

30. In *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 436 (E.D. Pa. 2010), the Eastern District of Pennsylvania held that allegations of "duplicative reporting of criminal cases on a single report" stated a claim for willful violation of FCRA, 15 U.S.C. § 1681e(b), noting that "Defendant does not even attempt [to] argue … that the FCRA can be reasonably interpreted to condone this practice." *Id.* The Federal Trade Commission ("FTC"), the government agency which was charged with enforcing FCRA up until the Consumer Financial Protection Bureau ("CFPB") was formed in 2011,[5] subsequently obtained civil penalties and injunctive relief against HireRight based on allegations that it, among other violations, "failed to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report." *United States of America v. HireRight Solutions, Inc.*, No. 12-cv-1313, Dkt. 2-1 (D.D.C. August 8, 2012) *see* Stipulated Final Judgment and Order for Civil Penalties, Permanent Injunction, and Other Equitable Relief, Dkt. 2-1 at 3–4 (Defendant agreed to pay $2.6 million penalty and "follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in a single report");  *see also* United States Government Accountability Office, *Criminal History Records: Additional Action Could Enhance the Completeness of Records Used for Employment-Related Background Checks* 50 (February 2015)[6] (reporting that the FTC had obtained civil penalties against a private background check company for a private background company that "failed to follow reasonable procedures to prevent the company from including the same criminal offense information in a consumer report multiple times").

31. Similarly, the Northern District of California has held that allegations that the defendant engaged in "duplicate reporting" were sufficient to state a claim that the defendant willfully violated FCRA. *See Hawkins v. S2Verify LLC*, No. 15-cv-03502, 2016 WL 107197, at *3 (N.D. Cal. Jan. 11, 2016).

---

[5] *See* 12 U.S.C. § 5512(a).
[6] *Available at* https://www.gao.gov/assets/670/668505.pdf.

32. The CFPB, the government agency currently charged with enforcing FCRA,[7] has also confirmed that duplicative reporting is misleading because it leaves "the impression that there were multiple offenses." CFPB, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment* 14–15 (October 2019).[8]

33. These court rulings and enforcement agency statements and actions put First Advantage on notice of what is already clear from any objectively reasonable reading of the statutory text: duplicative criminal history reporting falls short of FCRA's requirement that CRAs must follow reasonable procedures to assure the maximum possible accuracy of their reports. First Advantage's FCRA violations were therefore willful, subjecting First Advantage to liability for statutory and punitive damages under 15 U.S.C. § 1681n.

**D. The Class**

34. Plaintiff brings this action on her own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) for the following Class:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subjects of background check reports which (1) First Advantage furnished to third parties from five years before the filing of this Complaint to the final resolution of this action and which (2) included multiple items of criminal history information having the same court, case number, and disposition date.

Excluded from the Class are any employees, officers, or directors of First Advantage, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

35. **Ascertainability**. The Class is ascertainable in that it comprises individuals who can be identified by reference to purely objective criteria, including information from consumer report files in First Advantage's business records. Notice may be mailed to Class members using

---

[7] *See* 12 U.S.C. § 5512(a).
[8] *Available at* https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf.

the information in First Advantage's files, as updated through the National Change of Address Registry and other commercially available means.

36. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is not currently known, First Advantage's large size and the systematic nature of its failure to deduplicate hits from various databases in its consumer reports shows that the Class likely consists of at least thousands of persons and, therefore, it would be impracticable to bring all these persons before the Court as individual plaintiffs.

37. **Typicality**. Plaintiff Karen Williams's claims are typical of the claims of each Class member she seeks to represent because these claims all arise from the same operative facts and are based on the same legal theories.

38. **Adequacy**. Plaintiff will fairly and adequately protect the Class's interests. Plaintiff is committed to vigorously litigating this matter, and her interests are aligned with those of the Class. Plaintiff has retained counsel experienced in handling FCRA and consumer class actions.

39. **Commonality and Predominance**. Common issues of law and fact exist regarding Plaintiff's and the Class members' claims and predominate over any non-common issues. The common issues include:

> (a) whether First Advantage furnished consumer reports regarding Plaintiff and the Class members to third parties containing duplicative items of criminal history information;
>
> (b) whether reports containing duplicative items of criminal history information are inaccurate and misleading;
>
> (c) whether FCRA obligated First Advantage to follow reasonable procedures to deduplicate its background check reports before furnishing such reports to third parties;
>
> (d) whether First Advantage's failure to comply with FCRA was willful;
>
> (e) whether Plaintiff and the Class members are entitled to statutory damages and/or punitive damages.

40. **Superiority**. A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class members in individually controlling the prosecution of separate claims against First Advantage is small, as actual damages would be difficult and expensive to prove and the maximum statutory damages recoverable by any one Class member is limited to $1,000 under FCRA. Management of the Class's claims in a single proceeding will avoid inconsistent judgments and result in a more efficient use of judicial resources than resolving these same issues in many individual cases.

41. **Injunctive Relief Appropriate to the Class**. Fed. R. Civ. P. 23(b)(2). This action should also be maintained as a class action because First Advantage has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## VI. CLAIMS FOR RELIEF

### COUNT ONE – 15 U.S.C. § 1681e(b)

42. Plaintiff incorporates the foregoing allegations by reference as though fully restated here.

43. First Advantage is a consumer reporting agency subject to the FCRA, 15 U.S.C. § 1681 *et seq.*, because it regularly assembles and evaluates information on consumers for the purpose of furnishing consumer reports to third parties and uses means and facilities of interstate commerce to prepare and furnish its reports.

44. First Advantage furnished consumer reports regarding Plaintiff and the Class members to third parties.

45. First Advantage failed to use reasonable procedures to assure the maximum possible accuracy of the information reported regarding Plaintiff and the Class members. Specifically, First Advantage failed to follow reasonable procedures to verify the charges reported as pertaining to Ms. Williams, but which in fact pertained to her sister, and failed to follow reasonable procedure to de-duplicate the database hits reported regarding Ms. Williams and the Class members.

46. As a result of First Advantage's failure to follow reasonable procedures, its reports regarding Plaintiff and the Class members were inaccurate.

47. First Advantage willfully violated FCRA because its reporting of duplicative criminal history information was objectively unreasonable in light of FCRA's plain statutory language requiring "maximum possible accuracy" and court decisions and actions and statements by government enforcement agencies putting First Advantage on notice that such duplicative reporting of criminal history information violates FCRA.

48. As a result of First Advantage's inaccurate reporting, Plaintiff and the Class members suffered injuries to their statutorily protected reputational rights, economic injuries, and/or emotional distress, as well as being exposed to the risk that they might be denied a job, housing, credit, or insurance.

49. In redress for First Advantage's FCRA violations, Plaintiff and the Class members are entitled to actual damages, statutory damages, and punitive damages, as well as declaratory and injunctive relief.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of others similarly situated, prays for relief as follows:

1. An order certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and/or 23(b)(2), appointing Plaintiff as Class Representative, and appointing her Counsel as Class Counsel;

2. A declaration that First Advantage's practices violate the FCRA, 15 U.S.C. § 1681 *et seq.*;

3. Judgment awarding Plaintiff and the Class members actual damages pursuant to 15 U.S.C. § 1681o and statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

4. An injunction prohibiting First Advantage from further FCRA violations;

5. Pre-judgment and post-judgment interest;

6. Attorneys' fees, expenses, and costs of suit pursuant to 15 U.S.C. §§ 1681n and 1681o(a)(2), the common fund theory, or any other applicable statute, theory, or contract;

7. Leave to amend the Complaint to conform to the evidence produced at trial; and

8. Such other relief as this Court may deem just and proper.

## VIII. JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: March 21, 2022                    Respectfully submitted,

By: */s/ Devin Fok*

Devin H. Fok, Esq. (SBN 256599)
devin@devinfoklaw.com
DHF LAW, P.C.
2304 Huntington Drive. Suite 210
San Marino. CA 91108
Ph: (888) 651-6411
Fax: (818) 484-2023

*Attorneys for Plaintiff and the Proposed Class*